UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| DANNY WILDER, | ) |  |
|---|---|---|
|  | ) |  |
| Plaintiff, | ) |  |
|  | ) |  |
| v. | ) | No. 3:11 CV 203 |
|  | ) |  |
| AM GENERAL, LLC, | ) |  |
|  | ) |  |
| Defendant. | ) |  |

## OPINION and ORDER

I.  BACKGROUND

Defendant AM General, LLC, is a manufacturer of vehicles, specifically Hummer vehicles (H1s and H2s) and the military HMMWV (commonly called a "Humvee"). (DE # 41-1 at 3, Varga Dep. 7-8.) Defendant operated two plants during the time relevant to this lawsuit, commonly referred to as the HMMWV plant and the H2 plant. (*Id.*)

Plaintiff Danny Wilder was originally hired at defendant's H2 plant in 2001 as a welder in the body shop. (DE # 35-4, Pl. Dep. 46:8-21, DE # 41-1 at 8, Varga Dep. 29:6-12, 32:20-21.) He changed positions several times, ultimately taking a position as a paint tech in 2003. (DE # 41-1 at 9, Varga Dep. 33:3-9.) During his tenure at defendant's company, plaintiff belonged to the United Auto Workers, Local 5 ("the Union"), which had a collective bargaining agreement with defendant. (DE # 41-1 at 4, Varga Dep. 10.) According to the collective bargaining agreement, if employees were laid off from the H2 plant, they could be preferentially hired into the HMMWV plant if they were qualified to do the work. (*Id.* at 6, Varga Dep. 19:1-5.)

In June of 2002, plaintiff filed an injury report with defendant, indicating that he had been experiencing pain in his hands and wrists for about a month. (DE # 35-4 at 30, 33, Pl. Dep. 57:10-12, 60:7-13.) After seeing a few doctors and being placed on temporary restrictions several times, he continued to experience symptoms. (DE # 35-4 at 35-36, 38-39, 56-57, Pl. Dep. 65-66, 81, 83, 160-61.) On November 13, 2002, Dr. William Dodson placed plaintiff on permanent restrictions, specifically that plaintiff use a splint with functional activities and avoid strong, repetitive grasping activities with the right hand (i.e., activities with a frequency of greater than one every 30 seconds and a force greater than approximately 16 lbs. of grip strength). (*Id.* at 44-46, 57, Pl. Dep. 98-100, 161; DE # 35-4 at 67-68.) Dr. Dodson was apparently an associate of Dr. Joan Syznal, one of the doctors that defendant utilized to treat Workers' Compensation injuries. (*Id.* at 5, Varga Dep. 13:1-15.) In 2006 and 2007, plaintiff asked Dr. Szynal to remove his restrictions several times, but each time she declined to do so after performing electrodiagnostic tests that she believed indicated the continued existence of carpal tunnel syndrome. (DE # 35-4 at 47-48, 51; Pl. Dep. 107-108, 112; DE # 35-5.)

In August of 2008, plaintiff was laid off from the H2 plant as part of a large reduction in volume. (*Id.* at 9, 14, Varga Dep. 33:25, 54:22-25, 55:1.) Also in August of 2008 (though it is unclear whether before or after the layoff), plaintiff saw a different doctor, Dr. John Stavrakos. (DE # 35-6 at 8-9, Stavrakos Dep. 12-13.) After examining plaintiff, Dr. Stavrakos concluded that "there was electrodiagnostic evidence of a right carpal tunnel syndrome, moderate in severity." (*Id.* at 9, Stavrakos Dep. 14:13-15.)

Nonetheless, Dr. Stavrakos sent plaintiff with a letter indicating that he could return to work without restrictions. (*Id.* at 8, Stavrakos Dep. 13:8-11.)

After Varga was contacted by the Union regarding Stavrakos's letter, Varga contacted Dr. Syznal seeking her opinion on the matter. (DE # 41-1 at 11, Varga Dep. 44:5-10.) On December 18, 2008, Dr. Syznal responded to Varga that, given some of the data gathered by Dr. Stavrakos, plaintiff's condition was actually worse than it was in November 2007. (DE # 35-2 at 60.) Accordingly, Dr. Szynal recommended maintaining plaintiff's restrictions. (*Id.*) Based on this recommendation, Varga informed the union that defendant would not remove plaintiff's restrictions. (DE # 41-1 at 11, Varga Dep. 44:16-20.)

Beginning in August of 2008, the same month as the layoff, defendant began rehiring some laid-off employees. (*Id.* at 14, Varga Dep. 55:2-5.) Rehires had to meet certain attendance criteria and be physically able to perform the available jobs. (*Id.* at 14, Varga Dep. 55:15-17.) Some preferential hires also took place in December of 2008. (*Id.* at 14-15, Varga Dep. 56:24-25, 57:1-2.)

In February of 2009, plaintiff saw Dr. Ron Clark, an orthopaedic surgeon. (DE # 35-7 at 16, Clark Dep. 63.) Dr. Clark wrote a letter indicating that plaintiff had no indications of carpal tunnel syndrome and had no restrictions on physical activity. (DE # 35-2 at 62.) He also noted that plaintiff was at risk for recurrence should his physical activity level change significantly. (*Id.*) Defendant's director of employee relations, Jill

Varga, received the letter at some point thereafter (DE # 35-2 at 23, Varga Dep. 42), and the parties appear to agree that plaintiff's restrictions were not lifted as a result.

On March 2, 2009, another round of preferential hiring began. (*Id.* at 15, Varga Dep. 57:3-5.) For the next two or three weeks in March, a number of preferential hires were made. (*Id.* at 15, Varga Dep. 57:18-22.) In late March of 2009, defendant prepared to fill positions for conveyor tenders in the paint department. (*Id.* at 15, Varga Dep. 58:9-16.) Because it did not require gripping, this type of job was ideal for workers like plaintiff with limited abilities. (*Id.* at 15-16; Varga Dep. 58:9-16, 60:22-25, 61:1-5.) However, because it was a non-temporary position (a job predicted to last more than 30 days), the collective bargaining agreement between defendant and the Union required that the job be posted internally for employees to bid on and could not be offered to former employees like plaintiff. (*Id.* at 15, Varga Dep. 60:2-16.) The Union could have agreed to make the job "temporary" for a longer, 60-day period, and then the job would not have to be posted internally, but the Union did not agree to do so in this instance. (*Id.*) Accordingly, the conveyor tender jobs were posted internally at the company, and the positions were filled by people that were already within the system. (*Id.* at 19, Varga Dep. 83:4-9.) Defendant admits it rehired other employees after late March, including Gary Pyneart, who was rehired June 8, 2009 (*id.* at 18, Varga Dep. 77:15-20), James Knafel, who was preferentially rehired June 14, 2009, as a skilled trades journeyman (*id.* at 18, Varga Dep. 77:22-25), and Gary Hamilton, who was rehired September 14, 2009, as the result of an arbitrator's award (*id.* at 18, Varga Dep. 78:3-6.)

4

On July 23, 2009, the Union sent Varga a letter requesting that defendant pay for another doctor to examine plaintiff and assess his condition. (DE # 35-2 at 63.) In an email dated July 31, 2009, Varga informed a Union representative that the request would be denied because defendant was under no contractual obligation to provide an additional physician's opinion. (*Id.* at 64.) On August 21, 2009, the Union filed a formal grievance regarding the refusal of an additional physician's examination. (*Id.* at 65.) At a second-step grievance meeting on February 3, 2010, defendant denied the grievance. (DE # 41-1 at 14, Varga Dep. 54:1-15.)

In May of 2010, a recall occurred. (DE # 41-1 at 19, Varga Dep. 81:1-3.) Although the parties point to few facts related to this recall, it appears that plaintiff was not recalled, nor does he appear to take issue with the fact that he was not recalled at this time. Varga recalled that, in November of 2010, the company considered hiring employees back to the H2 plant, and plaintiff would have been a contender had that happened. (*Id.* at 17, Varga Dep. 65:12-21.) However, the program the company was going to use to build vehicles was delayed until August of 2011. (*Id.* at 18, Varga Dep. 79-80.)

In January of 2011, defendant offered plaintiff the opportunity to return to work for a two-week cleaning job at the H2 plant. (DE # 35-4 at 12-13, Pl. Dep. 19-20.) Plaintiff turned down the offer, believing he had the right to turn down two jobs before defendant would be entitled to refuse to offer him any further positions. (*Id.*) The next

5

recall occurred in August 2011, at which time plaintiff returned to work for defendant. (*Id.* at 17, 18, Varga Dep. 68:18-20, 79:21-25.)

On January 18, 2010, plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), alleging disability discrimination. (DE # 35-4 at 61-62.) After being issued a right-to-sue letter by that agency, plaintiff filed the present lawsuit. (DE # 1.) Defendant has moved for summary judgment (DE # 34), and the motion is now fully briefed and ripe for ruling.

## II. LEGAL STANDARD

Defendant has moved for summary judgment. FEDERAL RULE OF CIVIL PROCEDURE 56 requires the entry of summary judgment, after adequate time for discovery, against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). "[S]ummary judgment is appropriate–in fact, is mandated–where there are no disputed issues of material fact and the movant must prevail as a matter of law. In other words, the record must reveal that no reasonable jury could find for the non-moving party." *Dempsey v. Atchison, Topeka, & Santa Fe Ry. Co.,* 16 F.3d 832, 836 (7th Cir. 1994) (citations and quotation marks omitted).

The moving party bears the initial burden of demonstrating that these requirements have been met. *Carmichael v. Village of Palatine, Ill.,* 605 F.3d 451, 460 (7th Cir. 2010). "[T]he burden on the moving party may be discharged by 'showing'–that is,

pointing out to the district court–that there is an absence of evidence to support the nonmoving party's case." *Celotex,* 477 U.S. at 325. Once the moving party has met his burden, the non-moving party must identify specific facts establishing that there is a genuine issue of fact for trial. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252 (1986); *Palmer v. Marion County,* 327 F.3d 588, 595 (7th Cir. 2003) (citing *Celotex,* 477 U.S. at 324). In doing so, the non-moving party cannot rest on the pleadings alone, but must present fresh proof in support of its position. *Anderson,* 477 U.S. at 248; *Donovan v. City of Milwaukee,* 17 F.3d 944, 947 (7th Cir. 1994). In viewing the facts presented on a motion for summary judgment, the court must construe all facts in a light most favorable to the non-moving party and draw all reasonable inferences in favor of that party. *Chmiel v. JC Penney Life Ins. Co.,* 158 F.3d 966 (7th Cir. 1998).

### III.    DISCUSSION

#### A.    *Statute of Limitations*

The court first rejects plaintiff's assertion that any disputes over whether a claim is barred by the statute of limitations in a discrimination case should be decided by a jury, not a judge. The case plaintiff cites for this proposition only stated that the question of whether a statute of limitations bars a claim should be decided by a jury when it depends on issues of fact, such as the credibility of witnesses. *See Begoil v. Home Depot USA, Inc.,* 701 F.3d 1158, 1160-61 (7th Cir. 2012). Whether plaintiff's claim is time-barred is not dependent on any issues of fact, so the principle does not apply in this case.

7

As for whether plaintiff's claims were timely raised, the court begins with the requirements for the filing of EEOC charges. A plaintiff suing for disability discrimination must file a charge with the EEOC within 300 days after the alleged unlawful employment practice occurred. 42 U.S.C. § 2000e–5; 42 U.S.C. § 12117(a). In this case, plaintiff filed his charge of discrimination with the EEOC on January 18, 2010. Defendant contends that any claim based on facts occurring before March 24, 2009 (300 days before plaintiff's EEOC charge) is time-barred.

Plaintiff briefly argues that his allegations are timely under the "continuing violation doctrine," but this argument can be easily dismissed. The specific discriminatory actions he alleges defendant took against him are: (1) defendant's failure to preferentially hire him from March 2009 to September 2009, and (2) its refusal to send plaintiff for an additional physician's opinion in July of 2009. (DE # 40 at 11.) These actions are "discrete"in nature. *Nat'l R.R. Passenger Corp. v. Morgan,* 536 U.S. 101, 114 (2002) (providing examples of discrete actions, "such as termination, failure to promote, denial of transfer, or refusal to hire"). Further, the other actions not specifically delineated by plaintiff as adverse employment actions forming the basis of this lawsuit (e.g., defendant's decision to layoff plaintiff, defendant's decision to preferentially hire other former employees in early March, etc.) are also discrete actions. Accordingly, each act "starts a new clock for filing charges," and the clock starts on the date that the act "occurred." *Id.* at 113. Any discrete discriminatory acts that fall outside the statute of limitations are time-barred even though they may relate to other discrete acts that fall

8

within the statute of limitations. *Id.* at 112–13. Thus, any alleged discriminatory acts which took place before March 24, 2009, are time-barred. This includes (but is not limited to) defendant's decision to layoff workers, including plaintiff, in August of 2008 and it's failure to remove work restrictions or rehire him through March 24, 2009.

The timeliness or untimeliness of plaintiff's allegations regarding defendant's failure to preferentially rehire him in "late March" is less clear. As Varga testified in her deposition, in late March of 2009, defendant began preparing to fill positions for conveyor tenders in the paint department. (DE # 41-1 at 15, Varga Dep. 58:9-16.) Ultimately, the company offered the jobs to workers already working for the company (rather than laid-off workers like plaintiff) due to limits of the collective bargaining agreement. Because the record is unclear as to precisely when in March this almost-hiring took place, the court construes "late March" in a manner most favorable to plaintiff and assumes that defendant acted after March 24, 2009. Accordingly, for purposes of this opinion, the court assumes that any claim based on defendant's failure to hire plaintiff between late March and September of 2009 is not time-barred. As for plaintiff's claim that defendant improperly refused to order and pay for an additional physician's opinion, the court considers that claim timely, as well, as it undisputedly occurred after March 24, 2009. These two alleged actions constitute the entirety of plaintiff's timely allegations.

B.     *Discrimination Claims*

Defendant has moved for summary judgment on plaintiff's claims under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq*. The ADA prohibits employers from discriminating against "a qualified individual on the basis of disability." 42 U.S.C. § 12112(a). Where, as in this case, there is no argument or evidence supporting a claim of disability discrimination under the direct method of proof, the court need not discuss it and instead will focus solely on the indirect method of proof, also called the burden-shifting approach, as set out in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973); *see Leffel v. Valley Fin. Servs.,* 113 F.3d 787, 792 (7th Cir. 1997).

Under the indirect method of proof, plaintiff bears the initial burden of establishing a *prima facie* case of discrimination by showing that: (1) he is a qualified individual with a disability; (2) he was meeting his employer's legitimate employment expectations; (3) he suffered an adverse employment action; and (4) similarly situated employees without a disability were treated more favorably. *Dickerson v. Bd. of Trs. of Cmty. College Dist. No. 522,* 657 F.3d 595, 601 (7th Cir. 2011). If plaintiff satisfies this initial burden, then the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for the employment decision. *Id.* If the defendant satisfies this requirement, the plaintiff must then prove by a preponderance of the evidence that the defendant's reasons are pretextual. *Id.*

With regards to his claim that defendant failed to rehire him between late March and September 2009, plaintiff cannot establish a *prima facie* case of disability

discrimination because plaintiff has not met his burden of demonstrating that he was a qualified individual for purposes of the ADA. To determine whether a plaintiff is a "qualified individual" under the ADA, the court must determine whether he could perform the essential functions of the job and, if not, whether any reasonable accommodation would have enabled him to perform the job. *Waggoner v. Olin Corp.,* 169 F.3d 481, 484 (7th Cir. 1999).

Plaintiff claims that defendant first failed to rehire him in late March 2009 when defendant was engaged in preferential hiring for conveyor tender jobs in the paint department. Though the parties appear to agree that plaintiff could have physically performed the jobs, plaintiff does not dispute (and the record supports) defendant's contention that the collective bargaining agreement between defendant and the Union required defendant to offer the job to internal employees first, and that the jobs were all filled through this process. For defendant to have offered plaintiff a job in this instance, defendant would have had to violate the collection bargaining agreement, and the Seventh Circuit has made clear that the ADA does not require employers to go to such lengths to reasonably accommodate disabled employees. *King v. City of Madison,* 550 F.3d 598, 600 (7th Cir. 2008) (employers are not required to reassign a disabled employee to a position when such a transfer would violate a collective bargaining agreement).

Plaintiff also claims that defendant failed to rehire him into other positions, and that defendant instead filled those positions with other individuals. For example,

plaintiff points to the fact that defendant hired Gary Pyneart on June 8, 2009; James Knafel on June 14, 2009; and Gary Hamilton on September 14, 2009. First, plaintiff has not met his burden of demonstrating he could perform the essential functions of any of the jobs in question, because plaintiff has not pointed the court to evidence indicating what jobs these individuals were hired for, what department the jobs were in, what skills the jobs required, and what credentials plaintiff had that qualified him for the jobs. What little evidence there is indicates that plaintiff was not qualified for at least one of them – Knafel's job, which defendant states (and plaintiff does not dispute) Knafel received because he was a skilled trades journeyman, a credential plaintiff does not hold. (*Id.* at 18, Varga Dep. 77:22-25; DE # 35-4 at 29, Pl. Dep. 15-20.)

Further, Hamilton received his job as the result of an arbitrator's award. (*Id.* at 18, Varga Dep. 78:3-6.) If the Seventh Circuit does not require an employer to go so far as to violate a collective bargaining agreement in order to accommodate a disabled employee or applicant, this court is confident that the Seventh Circuit would not require an employer to disregard an arbitrator's award in order to give a job to a disabled employee or applicant instead. *See King,* 550 F.3d at 600. In short, because plaintiff has not created a genuine issue of fact regarding whether plaintiff could perform the essential functions of the jobs he claims he did not receive between March and September of 2009, with or without a reasonable accommodation, he has failed to establish that he is a "qualified individual" under the ADA, a necessary element of his *prima facie* case, and his claim under the indirect method fails. *Waggoner,* 169 F.3d at 484.

Plaintiff's only other timely claim is his allegation that defendant failed to provide him with an additional, fourth medical examination at defendant's expense. This claim fails because failure of an employer to provide a non-employee with an employer-paid medical examination is not an adverse employment action. Plaintiff cites no authority supporting his position that such an action qualifies as an adverse employment, nor can the court locate one. "[N]ot everything that makes an employee unhappy can form the basis of a federal discrimination suit." *Smart v. Ball State Univ.,* 89 F.3d 437, 441 (7th Cir. 1996). "Rather, the action must cause an adverse change in the terms and conditions of employment that is more disruptive than a mere inconvenience or alteration of job responsibilities." *Tyler v. Ispat Inland Inc.,* 245 F.3d 969, 972 (7th Cir. 2001).

Examples of adverse employment actions include "termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, [and] significantly diminished material responsibilities." *Atanus v. Perry,* 520 F.3d 662, 677 (7th Cir. 2008). Plaintiff experienced some of these actions earlier in his career, but, as explained previously, he did not file an EEOC charge in time for those actions to be addressed in this lawsuit. Instead, he attempted to frame one of defendant's more recent actions as an adverse employment action in order to keep his lawsuit alive. His attempt fails in this case, because there is no legal support for plaintiff's claim that an employer performs an adverse employment action when it refuses to pay for a fourth medical examination for a non-employee, and this court

declines to stretch ADA law to such an extent. An adverse employment action is a necessary element of plaintiff's *prima facie* case, and without it, his claim fails.

IV. **CONCLUSION**

For the foregoing reasons, defendant's motion for summary judgment (DE # 34) is **GRANTED.** The clerk is to enter final judgment in favor of defendant AM General, LLC, stating that plaintiff Danny Wilder shall take nothing by way of his complaint.

**SO ORDERED.**

Date: March 31, 2015

 s/ James T. Moody
JUDGE JAMES T. MOODY
UNITED STATES DISTRICT COURT